UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIT BANK, N.A.,

                              Plaintiff,

        -against-

WILLIAM COVINO, and BOARD OF
DIRECTORS OF EAGLE WOOD VISTAS
HOMEOWNERS ASSOCIATION, INC.,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___09/14/2022___

No. 17 Civ. 9579 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff CIT Bank, N.A. ("Plaintiff"), as mortgagee, commenced the instant mortgage foreclosure action against Defendants William Covino ("Covino") and the Board of Directors of Eagle Wood Vista Homeowners Association, Inc.,[1] seeking to foreclose on the subject property, 10 Eagle Wood Vista Lane, Pine Island, NY 10969 (the "subject property"), due to *pro se* Defendant Covino's, the mortgagor, failure to make timely payments. (ECF No. 1.) Presently before the Court are the unopposed motions by Plaintiff's assignee, Wilmington Savings Fund Society, FSB, as owner trustee of the Residential Credit Opportunities Trust VI-A ("Wilmington"), seeking its substitution in place of Plaintiff under Federal Rule of Civil Procedure 25(c), summary judgment in his favor under Federal Rule of Civil Procedure 56,[2] and the appointment of a referee under Federal Rule of Civil Procedure 53. (ECF No. 64.) *Pro se* Defendant failed to file a response

---

[1] Plaintiff named the Board of Directors of Eagle Wood Vista Homeowners Association, Inc. as a defendant in the event they assert a lien on the property due to *pro se* Defendant's failure to pay homeowner's common and/or maintenance fees.

[2] Attached to the motion for summary judgment is a notice to *pro se* Defendant informing him of the nature and consequences of summary judgment as required under *Vital v. Interfaith Medical Center*, 168 F.3d 615, 620–21 (2d Cir. 1999). Additionally, a copy of Rule 56 is also attached.

in opposition to any of these motions. For the following reasons, the Court GRANTS Wilmington's motions.

## BACKGROUND

The following facts are drawn from Wilmington's Local Rule 56.1 Statement of Undisputed Material Facts ("SUMF", ECF No. 66), Wilmington's declarations and accompanying exhibits, and are undisputed except as indicated.

## I.    Factual Background

On May 16, 2007, *pro se* Defendant obtained a loan from IndyMac Bank, F.S.B. ("IndyMac") in the amount of $752,000.00 as evidenced by a Note and Mortgage signed by Defendant. (SUMF ¶ 2.) On March 19, 2009, Plaintiff, then known as OneWest Bank, FSB, became the owner of the subject loan when it acquired substantially all of the assets of lndyMac. (*Id.* ¶ 3.)

On November 1, 2010, Defendant modified the terms of the Note and Mortgage by execution of a loan modification agreement with OneWest (the "Modification Agreement"). (*Id.* ¶ 4.) On February 28, 2014, the Office of the Comptroller of the Currency ("OCC") approved an application to change OneWest Bank, FSB's charter from that of a federal savings association to a national association. Consequently, OneWest Bank, FSB's name was changed to OneWest Bank, N.A. (*Id.* ¶ 5.)  On August 3, 2015, OneWest Bank, N.A. merged with CIT Bank, Salt Lake City, UT and became CIT Bank, N.A. (*Id.* ¶ 6.)

On November 11, 2016, Defendant defaulted on their obligations under the Note and Mortgage by failing to make the monthly installment payments and all subsequent monthly payments thereafter. (*Id.* ¶ 7.) On June 17, 2021, the Note and Mortgage were sold and assigned to Wilmington pursuant to a written assignment. (*Id.* ¶ 8.)

## II.    Procedural Background

Plaintiff filed its complaint on December 6, 2017. (ECF No. 1.) On December 29, 2017, *pro se* Defendant was served with a copy of the summons and complaint. (ECF No. 11.) After *pro se* Defendant filed an "Objection & Petition for a Redress of Grievances" on February 2, 2018 (ECF No. 12), the Court subsequently directed him to file an answer in conformity with Federal Rule of Civil Procedure 8(b). (ECF No. 15.) After an extension, *pro se* Defendant filed his answer with two affirmative defenses and a counterclaim against Plaintiff on March 29, 2018. (ECF No. 19.) Plaintiff filed a response to *pro se* Defendant's counterclaim on April 20, 2018. (ECF No. 21.)

After the Court granted Plaintiff's motion to serve Defendant Board of Directors of Eagle Wood Vista Homeowners Association, Inc. by alternative means (ECF No. 31), Plaintiff served that defendant by publication. (*See* ECF No. 32.) After it failed to appear, on January 14, 2019, the Clerk of the Court issued a Certificate of Default against Defendant Board of Directors of Eagle Wood Vista Homeowners Association, Inc. (ECF No. 66.)

After Plaintiff first moved for leave to file a motion for summary judgment, the Court granted it leave and issued a briefing schedule accordingly. (ECF Nos. 37 & 39.) The parties filed their respective briefing in January 2020. (ECF Nos. 47–50.) On October 6, 2020, the Court denied Plaintiff's motion for summary judgment for failure to establish *pro se* Defendant's default on the loan. (ECF No. 51.)

After Plaintiff moved again for file for summary judgment, the Court granted it leave and issued another briefing schedule accordingly. (ECF No. 52 & 53.) A copy of the briefing schedule was mailed to *pro se* Defendant on November 5, 2020, at his address on 28 North Drive, Rochelle Park, NJ.

As noted above, on June 17, 2021, Plaintiff sold and assigned the relevant Note and Mortgage to Wilmington pursuant to a written assignment. (SUMF ¶ 8.) After a series of

extensions, Wilmington filed its briefing presently pending before the Court in September 2021: its notice of motion (ECF No. 64), memorandum in support ("Motion," ECF No. 70), Rule 56.1 Statement (ECF No. 66), exhibits in support (Gold Decl., ECF No. 68), and the notice to *pro se* Defendant informing him of the nature and consequences of summary judgment (ECF No. 65). Plaintiff's counsel also separately filed a certificate of service of all its client's relevant briefing on July 14, 2021, on *pro se* Defendant. (ECF No. 71.) However, to date, *pro se* Defendant has both failed to serve and file any response in opposition to Plaintiff's instant motions.

## LEGAL STANDARD

### I.      Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine

4

issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted*." Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

An unopposed motion for summary judgment, such as the one here, is not automatically granted. The Court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

## II.      Federal Rule of Civil Procedure 25(c)

Substitution of parties upon transfer of an interest is governed by Federal Rule of Civil Procedure 25(c), which provides:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

"Rule 25(c) substitution is a procedural mechanism designed to facilitate the continuation of an action when an interest in a lawsuit is transferred and does not affect the substantive rights of the parties." *Travelers Ins. Co. v. Broadway W. St. Assocs.*, 164 F.R.D. 154, 164 (S.D.N.Y. 1995).

"The purpose of Rule 25(c) is to allow a case to continue even when an interest changes hands without requiring a new suit because the successor in interest is bound by a judgment against its predecessor even if substitution is not effected." *U.S. Securities and Exch. Comm'n v. Collector's Coffee Inc.*, 451 F. Supp. 3d 294, 297 (S.D.N.Y. 2020) (internal quotation marks and citations omitted). "Courts will frequently grant substitution where a party has fully transferred its interest to another person or entity." *Id.* at 297–98 (citing cases). Nonetheless, "[s]ubstitution of a

successor in interest or its joinder as an additional party under Rule 25(c) is generally within the sound discretion of the trial court." *Id.* at 298 (quoting *Organic Cow, LLC v. Center of New England Dairy Compact Research*, 335 F.3d 66, 71 (2d Cir. 2003)).

"In deciding a substitution or joinder motion under Rule 25(c), a court should consider whether substitution will expedite and simplify the action." *Id.* (internal quotation marks and citations omitted); *see also FDIC v. Tisch*, 89 F.R.D. 446, 448 (E.D.N.Y. 1981) ("A court's primary consideration in deciding a motion under Rule 25(c) is whether substitution will expedite and simplify the action.").

### III.    Federal Rule of Civil Procedure 53

Under Rule 53, a court may appoint a Special Master or a Magistrate Judge to "perform an accounting or resolve a difficult computation of damages," which sometimes is advisable in mortgage foreclosure cases. *See CIT Bank, N.A. v. Langley*, 117CV1548ADSAKT, 2019 WL 6050258, at *6 (E.D.N.Y. Nov. 15, 2019); *CIT Bank, N.A. v. Metcalfe*, No. 15-CIV-1829, 2017 WL 3841852, at *1–2 (E.D.N.Y. Sept. 1, 2017) (appointing a Special Master to calculate "the outstanding principal, accrued late charges, related expenses and attorneys' fees" with respect to a mortgage foreclosure, and to determine whether the subject property could be sold as one parcel). Moreover, upon awarding summary judgment to a plaintiff in a foreclosure action, the New York Real Property Actions and Proceedings Law ("RPAPL") allows for the appointment of a referee. *See Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs.*, LLC, No. 16-Civ-9112, 2018 WL 4373996, at *8 (S.D.N.Y. Sept. 12, 2018); *U.S. Bank Tr., N.A. v. Dingman*, No. 16-Civ-1384, 2016 WL

6902480, at *3 (S.D.N.Y. Nov. 22, 2016) (appointing a referee to calculate damages and sell the property after awarding summary judgment to a foreclosing plaintiff).

## DISCUSSION

By its motions, Wilmington first asks the Court to grant summary judgment against *pro se* Defendant, both in favor of its own claims and against *pro se* Defendant's counterclaims and affirmative defenses. (Mot. at 5.) Wilmington also asks the Court to substitute it in the place of Plaintiff and for the caption to be amended to reflect the same. (*Id.*) And lastly, Wilmington asks the Court to appoint a referee to compute the sums due and determine if the subject property may be sold in one parcel. (*Id.*) The Court addresses Wilmington's arguments in that order.

### I.   Summary Judgment

#### A.   *Plaintiff's Mortgage Foreclosure Claim*

Claims concerning title to real property are determined by the law of the state where the property is located. *See TEG N.Y. LLC v. Ardenwood Estates, Inc.*, 2004 WL 626802, *3 (E.D.N.Y. Mar. 30, 2004) (citing *El Cid Ltd. v. N.J. Zinc Co.*, 575 F. Supp. 1513, 1515 (S.D.N.Y. 1983), *aff'd*, 770 F.2d 157 (2d Cir. 1985)). Here, the subject property is located in New York. Accordingly, New York law applies.

In a New York mortgage foreclosure action, a plaintiff seeking summary judgment must establish three elements: (1) the existence of a mortgage, (2) a promissory note, and (3) evidence of a default on the note by the mortgagor (borrower). *See Wells Fargo Bank, N.A. v. Ullah*, No. 13-cv-485, 2015 WL 3735230 (S.D.N.Y. June 15, 2015) (quoting *E. Sav. Bank, FSB v. Bright*, No. 11-cv-1721, 2012 WL 2674668 (E.D.N.Y. July 5, 2012)); *E. Sav. Bank, FSB v. Ferro*, No. 13-cv-5882, 2015 WL 778345 (E.D.N.Y. Feb. 24, 2015); *CIT Bank, N.A. v. O'Sullivan*, No. 14-cv-5966, 2016 WL 2732185, at *4 (E.D.N.Y. May 10, 2016). Typically, the elements of a claim seeking mortgage foreclosure are demonstrated through the introduction of documentary evidence.

In support of its motion for summary judgment, Wilmington submits the affidavit of Ron McMahan, the Chief Executive Officer ("CEO") of American Mortgage Investment Partners Management, LLC ("AMIP"), and administrator and attorney-in-fact for Wilmington. (Gold Decl., Ex. C, ECF No. 68-3.) Because AMIP maintains business records for the subject loan on behalf of Wilmington, McMahan avers that, in his capacity as CEO, he is familiar with AMIP's business records, including those regarding the subject property.[3] (*Id.*) AMIP's records are maintained in the ordinary course of business and it is AMIP's regular practice of business to make these records. (*Id.*)

McMahan avers that on June 13, 2007, *pro se* Defendant executed, acknowledged, and delivered the Mortgage to IndyMac for the purpose of securing a loan.[4] (*Id.*) The mortgage was duly recorded in Orange County, New York.[5] (*Id.*) On March 19, 2009, the Note and Mortgage were sold to One West Bank, FSB.[6] (*Id.*) One West Bank, FSB subsequently changed its name to One West N.A. (*Id.*) Thereafter, One West N.A. changed its name to CIT Bank, N.A. as part of an acquisition. (*Id.*) Upon a review of the relevant documents, McMahan avers that on November 11, 2016, *pro se* Defendant defaulted on the note and mortgage by failing to make a monthly installment payment. (*Id.*) Further, *pro se* Defendant Covino has failed to make any payments since November 11, 2016. (*Id.*) In support, McMahan annexes a copy of the subject loan's history to his affidavit. McMahan finally avers that following the commencement of this action, on June 17,

---

[3] A copy of a limited power of attorney between AMIP and Wilmington is attached to McMahan's affidavit.

[4] A copy of the Note and Mortgage is attached to McMahan's affidavit.

[5] A copy of the assignment of the Note and Mortgage, which was recorded, is attached to McMahan's affidavit.

[6] A copy of the name change documentation is attached to McMahan's affidavit.

2021, the Notice and Mortgage were sold and assigned to Wilmington pursuant to a written assignment.[7] (*Id.*)

After reviewing Plaintiff's exhibits, and considering that *pro se* Defendant has failed to either object or submit any documentary evidence that would raise an issue of fact precluding summary judgment in this action regarding the issue of default, the Court concludes that Plaintiff has sufficiently established  the three elements for a mortgage foreclosure claim in New York: (1) the existence of a mortgage, (2) a promissory note, and (3) evidence of a default on the note by the mortgagor (borrower). Accordingly, the Court grants summary judgment in favor of Plaintiff in its mortgage foreclosure claim.

B.      *Pro se Defendant's Affirmative Defenses and Counterclaims*

In his Answer, *pro se* Defendant first raises as an affirmative defense that the Court lacks subject matter jurisdiction. (*See* Answer, ECF No. 19 at 2.) But as Wilmington correctly asserts in his motion, the Court has diversity subject matter jurisdiction over this case. (Mot. at 7.)

Under 28 U.S.C. § 1332, federal district courts have original subject matter jurisdiction where the matter in controversy exceeds $ 75,000 and the action is between citizens of different states. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217–18 (2d Cir. 2016). Diversity jurisdiction is proper where there is complete diversity of citizenship. *See* 28 U.S.C. § 1332.

"[T]he well-established rule [is] that diversity of citizenship is assessed at the time the action is filed." *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). Particularly relevant here, "a national bank is a citizen only of the state listed in its articles of

---

[7] A copy of the written assignment of the Note and Mortgage to Wilmington is attached to McMahan's affidavit.

association as its main office." *Melina*, 827 F.3d at 219; *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006).

Here, at the commencement of the action, Plaintiff's main office, as stated in its articles of association, was located in Pasadena, California—for which Plaintiff is considered a citizen of the State of California. (*See* Gold Decl., Ex. H, ECF No. 68-8.)  In his Answer, *pro se* Defendant asserts that he is domiciled in Rochelle Park, New Jersey—for which he is considered a citizen of the State of New Jersey. (*See* Answer at 1.) And finally, Plaintiff alleged in its Complaint that Defendant Board of Directors of Eagle Wood Vista Homeowners Association, Inc. is a domiciliary of the State of New York. (*See* Compl. ¶ 8.) Thus, there is complete diversity of citizenship in this case. Additionally, because the unpaid balance of the subject loan on the date of the commencement of this action was $386,647.91, the amount in controversy was well above the $75,000 threshold. (*Id.* ¶ 9.)

In his Answer, liberally construed, *pro se* Defendant seems to also assert a second affirmative defense and counterclaim alleging that Plaintiff committed fraud. (*See* Answer at 2–6.) But the Court agrees with Wilmington that *pro se* Defendant's allegations are conclusory and insufficient to escape liability. (Mot. at 8.)

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). Under Federal Rule of Civil Procedure 9(b), a claim for fraud must be plead with particularity. *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016).

Further, under New York law, fraud is subject to a six-year statute of limitations. C.P.L.R. § 213(8); *Williams v. Long Beach Mortg. Co.*, No. 19-CV-970, 2020 WL 4735354, at *8 (S.D.N.Y. Aug. 14, 2020). Also, a party seeking to repudiate a contract procured by fraud must act promptly or they will be deemed to have chosen to affirm the contract, and ratification of the agreement bars the defense of fraud. *See Chalos v. Chalos*, 512 N.Y.YS.2d 426, 427 (2d Dep't 1987); *Banque Arabe Et Internationale D'Investissement v. Md. Nat. Bank*, 850 F. Supp. 1199, 1211–12 (S.D.N.Y. 1994), *aff'd* 57 F.3d 146 (2d Cir. 1995).

Here, even after liberally construing the Answer and drawing all reasonable inferences in his favor, *pro se* Defendant fails to sufficiently plead a fraud claim with the necessary specificity and detail as required by Rule 9(b). And even if he had done so, *pro se* Defendant's allegations of fraud stems from events that purportedly occurred at the origination of the subject loan on May 16, 2007—for which his claim of fraud became time-barred as of 2013. CPLR § 213(8). Moreover, nowhere does *pro se* Defendant allege that he acted promptly to repudiate the allegedly fraudulent contract. Accordingly, the Court dismisses *pro se* Defendant's counterclaim for fraud and strikes his affirmative defenses.

## II. Substitution and Amendment of the Caption

Wilmington next asks the Court to substitute it in place of Plaintiff in this action and to amend the caption to reflect the same. (Mot. at 5.) After due consideration, the Court grants Wilmington's request.

Under New York law, "[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *JPMorgan Chase Bank, Nat'l Ass'n v. Weinberger*, 37 N.Y.S.3d 286, 288 (2d Dep't 2016).

Here, as noted above, McMahan asserts in his affidavit that the Note and Mortgage were sold and assigned to Wilmington pursuant to a written assignment. (*See* Gold Decl., Ex. H. ¶ 12.) He attaches a copy of the written assignment as an exhibit, which indicates that it was recorded in the Orange County Clerk's Office in the State of California on June 17, 2021. (*Id.*) This is sufficient to show that Wilmington "holds the requisite interest in this action." *Assets Recovery Ctr. Investments, LLC v. Smith*, 13CV253CBACLP, 2017 WL 10088188, at *4 (E.D.N.Y. Aug. 18, 2017); *accord Ditech Fin. LLC v. Ragusa*, 19-CV-1714(JS)(ARL), 2020 WL 6118827, at *5 (E.D.N.Y. Oct. 16, 2020).

And furthermore, there is no indication in the record that either indicates or suggests that substitution will not expedite or simplify the action here. *Pro se* Defendant also failed to file a response arguing why that would be the case here. Accordingly, the Court grants Wilmington's substitution request.

### III. Appointment of Referee

Lastly, as it has granted summary judgment in favor of Plaintiff's foreclosure claim, the Court grants Wilmington's motion to appoint a referee to resolve the remaining issues involving the foreclosure. Accordingly, the Court will appoint Benjamin Ari Greenwald, Esq., from the Law Office of Benjamin Greenwald in Middletown, New York, to conduct any proceedings necessary to ascertain and compute the amounts due to Wilmington under the mortgage being foreclosed in this action and, if necessary, to examine and report whether the subject property can be sold in one or more parcels and to submit a report and recommendation to this Court for its review. *See CIT Bank, N.A. v. Langley*, 117CV1548ADSAKT, 2019 WL 6050258, at *6 (E.D.N.Y. Nov. 15, 2019); *One W. Bank, FSB v. Davi*, 1:13-CV-1055 FJS/RFT, 2014 WL 4897311, at *4 (N.D.N.Y. Sept. 30, 2014).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Wilmington's motions for summary judgment under Rule 56, to substitute Wilmington in place of Plaintiff under Rule 25(c), and to appoint a referee to resolve the remaining issues involving the foreclosure under Rule 53.

The Court further APPOINTS Benjamin Ari Greenwald, Esq., from the Law Office of Benjamin Greenwald at 210 East Main Street, Suite 310, Middletown, New York 10940-4061, at telephone number (845) 567-4820, as Referee to ascertain and compute the amount due to Wilmington under the subject Note and Mortgage, including but not limited to, unpaid principal balance, interest, accumulated late charges, and recoverable balance due and owing on the Note secured by the Mortgage, and to examine and report whether the subject property should be sold in one parcel.

By accepting this appointment as Referee, Mr. Greenwald shall submit a declaration certifying that he in compliance with the requirements of Federal Rule of Civil Procedure 53, including but not limited to, section 53(a)(2) ("Disqualification"), section 53(c) ("Master's Authority") and section 53(g) ("Compensation"). In the event Mr. Greenwald is disqualified from receiving this appointment under the provisions of Rule 53, he shall notify the Court immediately in writing.

Mr. Greenwald shall produce his written Referee's Report to the Court as soon as is practicable. Wilmington shall submit monthly written status reports on the Referee's progress in producing his Report until its completion. Upon the submission of the Referee's Report to the Court, Wilmington shall pay for Mr. Greenwald's services in producing such report and submit a copy of the receipt.

The Clerk of Court is directed to substitute Wilmington Savings Fund Society, FSB, as owner trustee of the Residential Credit Opportunities Trust VI-A, in place of Plaintiff CIT Bank,

N.A., in the caption. The Clerk of the Court is further directed to terminate the motion at ECF No. 64, to mail a copy of this Opinion and Order to (1) *pro se* Defendant at his address on ECF and (2) Mr. Greenwald at his 210 E. Main St, Ste. 301, Middletown, N.Y. 10940-4061 address, and to show service on the docket.

Dated: September 14, 2022
White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

14